WENDY J. OLSON, IDAHO BAR NO.
UNITED STATES ATTORNEY
**DEBORAH A. FERGUSON, IDAHO BAR NO. 5333**
ASSISTANT UNITED STATES ATTORNEY
DISTRICT OF IDAHO
WASHINGTON GROUP PLAZA IV
800 PARK BOULEVARD, SUITE 600
BOISE, ID 83712
TELEPHONE: (208) 334-1211
FACSIMILE: (208) 334-1414

Attorney for Defendants

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| WESTERN WATERSHEDS PROJECT,<br><br>Plaintiff,<br><br>vs.<br><br>PETER DITTON,* Acting Director, Idaho State Office, Bureau of Land Management; RICK VANDERVOET,* Jarbidge Field Manager, BLM; BUREAU OF LAND MANAGEMENT, an agency of the United States,<br><br>Defendants. | Civil No. CV-04-181-S-BLW<br><br>**STATUS REPORT** |

*Substituted as defendants per F.R.C.P. 25(d)

The Bureau of Land Management (BLM) submits this status report for the period between May 31, 2009 and September 3, 2010, to advise the Court of its progress in fulfilling the provisions of the 2005 Stipulated Settlement Agreement (SSA).

**STATUS REPORT -- 1**

## I. Background of Litigation

The Jarbidge Field Office is located in south central Idaho, includes approximately 1.7 million acres, the vast majority (1.4 million acres) of which is managed by the BLM as public lands. This litigation began in 2004, when Western Watersheds Project (WWP) challenged the BLM's grazing management on 28 allotments located in the Jarbidge Field Office, contending that the management resulted in significant loss of sage-steppe habitat, the primary habitat for sage grouse and pygmy rabbits. In response to WWP's complaint, on August 1, 2005, the Court issued an injunction that prohibited grazing on the allotments until the BLM completed a grazing Environmental Impact Statement (EIS). *See* Docket No. 123.

Before the Court could rule on motions to reconsider that August 1, 2005 injunction, the parties, including 11 grazing permittees, entered an SSA to address grazing management within the Jarbidge Field Office. In the SSA, the BLM agreed to commence revisions/updates to its 1987 Resource Management Plan (RMP), the guiding land use planning and management document for the field office. The proposed revisions are more expansive than that required by a grazing EIS. Consequently, the parties agreed to implement interim measures to address grazing in the Field Office until the RMP is completed. The SSA included interim grazing plans for the affected allotments, which included specific limitations on the number of livestock that could graze on the allotments. The parties submitted the SSA to the Court on September 30, 2005. *See* Docket No. 147-2. The Court approved the SSA on October 20, 2005. *See* Docket 149.

An Analysis of the Management Situation (AMS), which evaluated existing conditions in the Field Office as part of the initiation of the RMP revision process, was completed in March 2007. In July 2007, the Murphy Complex Fire burned approximately 653,000 acres, including approximately 426,000 acres in the Jarbidge Field Office. The areas burned included habitat for

**STATUS REPORT -- 2**

sensitive species and plants such as sage grouse, pygmy rabbits, and slickspot peppergrass (*lepidium pappilliferum*). In response to the fire, the BLM adopted fire emergency stabilization and rehabilitation plans. These plans included provisions for seeding burned areas, weed treatments, soil stabilization treatments, fencing and monitoring. While grazing was allowed to continue on some of the unburned areas, severely burned areas were closed to grazing until certain conditions (specified in the emergency plans) could be met. As a result of the fire, the affected environment chapter of the draft RMP/EIS had to be extensively revised. This in turn delayed the RMP process.

On March 2, 2008, WWP filed an amended complaint, alleging that the BLM's stabilization and recovery plans were inadequate, and permitted actions (such as the installation of temporary fences) that were not justified by the circumstances. The complaint included all of the 28 allotments covered by the 2005 SSA, and 36 additional allotments. *See* Docket No. 154. The Court allowed WWP's challenges with respect to the 36 allotments, but rejected the challenge to the management of the SSA allotments, concluding that the parties had conclusively agreed to the management of those allotments in the 2005 SSA. *See* Docket No. 201, p. 11 ("The SSA – signed by the parties and approved by the Court – is a private contract and enforceable as such.") Accordingly, WWP amended its complaint, and the Court held a 10-day hearing starting in October 2008 to consider the arguments and evidence of the parties.

On February 26, 2009, the Court issued a comprehensive memorandum opinion and order addressing the issues raised by the parties. *See* Docket 363. The Court upheld one of WWP's claims, where WWP alleged that the BLM mis-interpreted its 1987 Jarbidge RMP provisions pertaining to the management of sensitive species habitat in violation of FLMPA. The Court rejected WWP's remaining five challenges under NEPA and FLMPA. In that memorandum

**STATUS REPORT -- 3**

opinion and order, the Court acknowledged the delays in the completion of the RMP draft, noting that the BLM anticipated release of the draft RMP/EIS by September 2009 with an anticipated completion date of March 2011. *See* Docket No. 363, p. 7.

## II. STATUS OF THE JARBIDGE RMP REVISIONS

The Assistant Secretary of the Interior, Land and Minerals, approved the release of the draft RMP/EIS on September 3, 2010. On that date, a notice of availability of the draft was published in the Federal Register, and review copies of the draft RMP/EIS were made available to the public. *See* Vol. 75 *Federal Register*, No. 171, 54177-8, September 3, 2010; http://www.blm.gov/id/st/en/prog/planning/jarbidge_resource/ Documents/draft_rmp_eis.html (page view 9-3-10)).

The Draft RMP EIS focuses its analysis on six alternatives, five action alternatives (including one alternative with two sub-alternatives) and the no-action alternative. Per the provisions of the SSA, the draft includes a no-grazing alternative, but does not analyze that alternative in detail, concluding that it did not address the purpose and need of the project. *See* Docket 147-2, paragraph II.16.C *and* Draft RMP/EIS at 2-14 through 2-15. However, one alternative, Alternative V, does consider "significantly reduced grazing levels in areas . . . with multiple use . . . conflicts," as is required by paragraph II.16.C of the SSA. *See* Draft RMP/EIS Chart Summarizing Alternatives at ES-5 through ES-25.

In developing its alternatives, the BLM met with and received comments from interested members of the public, elected officials, non-profit organizations as well as the Shoshone-Paiute Tribes, and other federal, state and local entities. The BLM met with representatives from the SSA parties on a regular basis, providing information on the draft, and considered comments from the parties in the development of the alternatives. The draft RMP/EIS is consistent with

**STATUS REPORT -- 4**

applicable BLM policies and regulations, including FLPMA, BLM's land use planning regulations, BLM's Manual, and BLM's Land Use Planning Handbook (H-1601-1, rev. 3/11/05.)

Consistent with the 2005 SSA the following issues, among others, were used to develop alternatives for the Jarbidge RMP draft: (1) vegetation (upland and riparian), especially as it relates to habitat for sage-grouse, fuels treatments, fire rehabilitation, and fire suppression, habitat for fish, wildlife and special status plants and animals, livestock forage; (2) livestock grazing; and (3) Areas of Critical Environmental Concern (ACECs). The draft identifies desired outcomes, allowable uses and management actions to achieve the objectives set out in each alternative.

The preferred alternative (Alternative IV-B) prioritizes 555,000 acres for fire suppression activities and planning, including key sage-grouse habitat, four ACECs and the Wildland Urban Interface; reducing average fire size and human-caused fires by improving water availability, reducing fire suppression response time, and limiting or prohibiting authorized uses at times to reduce risks of fire starts; managing vegetation to improve and expand native shrubland communities; making 1,352,000 acres available for livestock grazing; and designating five ACECs (232,000 acres) for their relevant and important values.

Public comments on the draft RMP/EIS will be received until December 2, 2010. After the close of the public comment period, the BLM will review and address the comments, revising the draft RMP as necessary to respond to pertinent issues. The final RMP/EIS will be subject to a protest period, which may result in protests which must be resolved before the Record of Decision is issued. If protests can be resolved expeditiously, it is hoped that the RMP/EIS Record of Decision will be issued by Fall 2011.

**STATUS REPORT -- 5**

### III.   STATUS OF INTERIM GRAZING PLANS

Having anticipated that the RMP review process would extend beyond the 2010 grazing year (March 1, 2010 through February 28, 2011) contemplated in the 2005 SSA, the parties agreed to use the 2005 SSA provisions to re-evaluate the Interim Grazing Plans that were included in the SSA. *See* paragraphs 29 through 36 of the SSA. The parties' attorneys met on August 2, 2010, and agreed to follow a tentative schedule to allow for continued conferral until September 17, 2010, where the parties would then consider whether the assistance of a mediator would be needed, with the idea that if major issues were not resolved by November 24, 2010, Alan Schroeder, representing several of the grazing permittees, would file a motion with the Court, requesting that the Court set a status conference to litigate and resolve the interim grazing plan issues prior to the beginning of the 2011 grazing season on March 1, 2011.

The parties also requested that the BLM provide the parties with documentation of the interim grazing plans, decisions to approve grazing on the allotments affected by the Murphy Complex Fire, monitoring summaries, and other information that the parties consider to be necessary to evaluate existing conditions and avenues to move forward. The documents will be made available to the parties by September 14, 2010.

The BLM has developed a tentative plan to address the issuance of new grazing permits for the entire field office within three years of the adoption of the RMP Record of Decision. Consequently, the new grazing plans are likely to be in effect for many of the SSA allotments rom the 2011 grazing year through the 2014 grazing year, or three years from the adoption of the Record of Decision, whichever is later.

## IV. CHANGES IN THE JARBIDGE FIELD OFFICE LANDSCAPE

In addition to the litigation-related impacts on management within the Jarbidge Field Office, a portion of the field office is subject to the provisions of the Owyhee Public Lands Management Act, which was part of the Omnibus Public Lands Act of 2009. The Owyhee Public Lands Management Act designates Wild and Scenic River segments along the Jarbidge and Bruneau Rivers, and designates portions of former Wilderness Study Areas as Wilderness. The Act also provides for acquisition and retirement of grazing permits within the designated areas.

Further, range fires, particularly the Long Butte Fire which burned approximately 306,000 acres in the northern portion of the Jarbidge Field Office in August 2010, have altered the landscape somewhat. The Long Butte Fire area included approximately 254,000 acres of BLM-managed public lands, 6,000 acres managed by the Bureau of Reclamation, 2,000 acres managed by the military, 4,000 acres managed by the National Park Service, including the majority of the Hagarman Fossil Beds National Monument, 30,000 privately held acres, and 10,000 acres of State land. Within the BLM-managed areas, the vast majority of the Saylor Creek Wild Horse Herd Management area was burned. To protect the horses, and ensure that they have adequate forage and water, the BLM conducted an emergency herd gather on September 1-2, 2010, where 195 horses were gathered and transported to the BLM's horse corrals in Boise.

According to the BLM, the Long Butte Fire contains a wide variety of burn intensity and fire effects, leaving multiple, large unburned islands and a convoluted perimeter with many "fingers." The pre-fire vegetation was primarily grass with very little shrub cover, mostly crested wheat grass seedings and cheatgrass. Field observations and satellite imagery show

roughly 20 percent unburned, 60 percent low burn intensity, 20 percent moderate intensity and no measurable high intensity. The fire burned approximately 12,000 acres of key sage-grouse habitat. This habitat, although not high quality habitat, supported the few remaining sage-grouse located within the north end of the Jarbidge Field Office. Most of the fire was in un-inventoried potential slickspot peppergrass habitat; the BLM does not believe that any occupied habitat burned.[1] A few of the allotments include in the SSA were entirely burned; several are partially burned. The fire re-burned relatively small portions of the Murphy Complex Fire and larger portions of the Clover Fire (2005) and Sailor Cap Fire (2006).

Other 2010 fires burned approximately 50,000 additional acres, including approximately 5,000 acres of sage-grouse habitat. These fires affected SSA allotments, and sage-grouse and slickspot peppergrass habitat. These fires and continuing research on the fire and habitat characteristics of the Murphy Complex Fire will inform alternatives in the RMP that address fire suppression/avoidance, and may include changes in grazing management, vegetation priorities and fire responses in the proposed RMP final EIS.

## V.  CONCLUSION

The BLM and the parties have worked cooperatively to address issues pertaining to the Jarbidge Field Office and to the SSA in particular. The BLM believes that it has made diligent efforts to adhere to the spirit and contents of the SSA, and looks forward to the opportunity to continue to work with the parties on the RMP and the interim grazing plans.

---

[1] The BLM notes that during post-fire field inventories, staff from the Boise Field Office and the Jarbidge Field Office discovered slickspots outside of mapped potential habitat.

**STATUS REPORT -- 8**

DATED this 13 day of September, 2010.

                              WENDY J. OLSON
                              United States Attorney

                              DEBORAH A. FERGUSON
                              Assistant United States Attorney

**STATUS REPORT -- 9**

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on 13th day of September, 2010, the STATUS REPORT was electronically filed with the Clerk of the Court using the CM/ECF system which sent a Notice of Electronic Filing to the following persons:

Laurence "Laird" J. Lucas
llucas@lairdlucas.org

Todd C. Tucci
ttucci@advocateswest.org

W. Alan Schroeder
alan@schroederlezamiz.com

Albert Barker
apb@idahowaters.com

Tyler Anderson
tya@moffatt.com

Paul LaMar Arrington
pla@idahowaters.com

Scott L. Campbell
slc@moffatt.com

Murray D. Feldman
mfeldman@hollandhart.com

James L. Martin
jlm@moffatt.com

William Gerry Myers, III
wmyers@hollandhart.com

Craig A. Pridgen
cpridgen@mbvz.com

Travis L. Thompson
tlt@idahowaters.com

Pamela A. Hamlin

**STATUS REPORT -- 10**