IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| WESTERN WATERSHEDS PROJECT<br><br>    Plaintiff,<br><br>v.<br><br>STEVEN ELLIS, Director, Idaho State Office, Bureau of Land Management; RICK VANDERVOET, Jarbidge Field Manager, BLM; BUREAU OF LAND MANAGEMENT, an agency of the United States,<br><br>    Defendants. | Case No. CV 04-181-S-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |
|---|---|

## INTRODUCTION

The Court has before it the BLM's motion to extend interim grazing conditions. The Court heard oral argument on the motion on February 23, 2011, and took the motion under advisement. For the reasons explained below, the Court will deny the motion.

## LITIGATION BACKGROUND

On August 1, 2005, the Court issued a decision enjoining grazing on 28 allotments in the Jarbidge Resource Area (JRA) until the BLM prepared an Environmental Impact Statement (EIS) evaluating the re-issuance of grazing

**Memorandum Decision & Order - 1**

permits on those 28 allotments.  *See Memorandum Decision and Order (Dkt. 123)*.

The Court found that the BLM violated the National Environmental Policy Act ("NEPA"), 42 U.S.C. §§ 4321 *et seq*., the Federal Land Policy and Management Act of 1976 ("FLPMA"), 43 U.S.C. §§ 1701 *et seq,* and provisions of the JRA Resource Management Plan ("RMP"). *Id*.

In that decision, the Court considered giving the parties an opportunity to work out a remedy to propose to the Court for its approval.  Ultimately, however, the Court rejected that approach, opting instead to issue an immediate injunction banning all grazing on the 28 allotments.

The parties – including eleven intervenor/ranchers – then entered into extensive negotiations.  During those negotiations, the parties agreed to several short-term stays of the injunction to give themselves more time to reach an agreement, and the Court approved those agreements.

Eventually, the parties signed a Stipulated Settlement Agreement (SSA). The Court approved the SSA on October 20, 2005 and entered an Order stating that the injunction "is hereby modified by incorporating all provisions of the [SSA] as the terms of the injunction ordered by the Court, in place of the injunctive relief previously ordered." *See Order (Dkt. 149)*.

In the SSA, the BLM agreed to prepare a revised JRA RMP and supporting

EIS, and then conduct site-specific NEPA reviews and issue ten-year grazing permit decisions for all JRA allotments (not just the 28 allotments governed by the SSA terms), which will be tiered to the revised RMP and EIS. *See SSA* at ¶ 18. Those permits are to be issued within 3 years of the completion of the revised RMP. *Id.*

The SSA also provided for Interim Grazing Management Plans ("IGMPs") to govern grazing "until the end of the 2009 grazing year." *Id.* at ¶ 35. While the parties expected the JRA RMP to be completed by 2009, *id.* at ¶ 8, they provided that if one more year was needed, "the [IGMPs] will also be extended for another year," *i.e.*, the 2010 grazing season. *Id.* at ¶ 35. If still more time was needed, and the parties could not reach agreement on the continuation of the IGMPs, the parties agreed to engage in mediation. *Id.* at ¶ 36. In the event mediation was not successful, "the parties reserve[d] the right to seek judicial relief as may be necessary." *Id.* Later in the agreement, the parties reserved the right to seek relief from the Court "pursuant to F.R.Civ.P. 60(b) as may be necessary." *Id.* at ¶ 45.

It now appears that the Record of Decision on the JRA RMP will not be completed until 2012, at the earliest, and the grazing permits based on the new RMP would not be issued until 2015. The BLM has filed this motion to extend the IGMPs to cover this period. Through the mediation process which the parties

agreed to, the parties have reached agreement on grazing conditions to govern 11 of the 28 allotments.  Accordingly, only 17 allotments remain at issue.

## ANALYSIS

The Court has held that the BLM violated NEPA, FLPMA, and the RMP in issuing the 28 grazing permits at issue, and further found that irreparable harm warranted an injunction stopping all grazing on these allotments.  When the parties agreed that grazing could continue, governed by IGMPs, the Court approved that agreement and modified its injunction to incorporate that agreement.

The SSA does not provide for the continuation of the IGMPs past 2010.  The BLM wants the Court to impose an extension of the IGMPs on WWP, but the IGMPs exist only as a result of an agreement of the parties, not as a remedy imposed by the Court.  The Court's remedy was an injunction banning all grazing, and the Court approved the IGMPs only because they were the product of an agreement among the parties.  Accordingly, the IGMPs exist only as long as the parties agree they exist.  Because there is no agreement on the IGMPs beyond 2010, the IGMPs cease to exist, and the Court's remedy – the injunction – takes over.

The BLM accurately points out that the Court (1) modified its injunction to incorporate the terms of the SSA, and (2) stated that this modified injunction was

"in place of the injunctive relief previously ordered." *See Order (Dkt. 149)*. This language, the BLM asserts, means that the IGMPs were imposed "in place of" the original injunction, and thus the issue is whether those IGMPs should be extended, not whether the original injunction should be re-imposed.

The Court disagrees. The language simply means that so long as the IGMPs exist, they take the place of the injunction. It means nothing more, and nothing less. Importantly, the parties never asked the Court to withdraw its decision finding NEPA and FLPMA violations. Accordingly, the prior decision remains in full force and effect, and governs grazing in the absence of an approved agreement to the contrary. To lift the injunction, the BLM bears the burden of showing that the NEPA and FLPMA violations have been cured or ameliorated, so that the irreparable harm no longer exists.

This burden does not shift even if the starting point is the SSA rather than the Court's injunction. To extend the expired IGMPs, the BLM would have to modify the SSA. The governing law, and the SSA itself (as quoted above), require compliance with Federal Rule of Civil Procedure 60(b) for such a modification. Under that Rule, the BLM must satisfy the initial burden of showing a significant change either in factual conditions or in the law warranting modification of the SSA. *See U.S. v. Asarco Inc.*, 430 F.3d 972, 979 (9th Cir.

**Memorandum Decision & Order - 5**

2005); *Memorandum Decision (Dkt. 201)* at p. 12 (imposing identical burden on WWP when it sought relief that would modify SSA).

Thus, either way, the BLM has the burden of showing that the NEPA and FLPMA violations have been resolved to the point that the irreparable harm no longer exists. That showing has not been made at this point, and hence the BLM's motion must be denied.

The Court is not holding here that the BLM is precluded from pursuing a motion under Rule 60(b). On the contrary, the BLM remains free to file appropriate motions and make that argument. Likewise, the parties are free to continue the negotiations envisioned by the SSA.

## ORDER

In accordance with the Memorandum Decision set forth above,

NOW THEREFORE IT IS HEREBY ORDERED, that the motion to extend interim grazing conditions (docket no. 398) is DENIED.

DATED: **February 28, 2011**

Honorable B. Lynn Winmill
Chief U. S. District Judge