IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| WESTERN WATERSHEDS PROJECT<br><br>      Plaintiff,<br><br>      v.<br><br>STEVEN ELLIS, Director, Idaho State Office, Bureau of Land Management; RICK VANDERVOET, Jarbidge Field Manager, BLM; BUREAU OF LAND MANAGEMENT, an agency of the United States,<br><br>      Defendants. | Case No. 1:CV 04-181-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

The Court has before it a motion for attorney fees and costs filed by WWP. The motion is fully briefed and at issue. For the reasons explained below, the Court will deny the motion.

## BACKGROUND OF LITIGATION

This case began in 2004, when WWP challenged the BLM's renewal of ten-year grazing permits for 28 allotments in the Jarbidge Resource Area (JRA). In 2005, the Court issued a decision enjoining grazing in those allotments after finding that the renewals violated NEPA, FLPMA, and the JRA RMP. *See Western Watersheds Project v. Bennett,* 392 F.Supp.2d 1217 (D. Idaho 2005).

**Memorandum Decision & Order - 1**

The parties thereafter negotiated a Stipulated Settlement Agreement (SSA) that established interim grazing restrictions as the BLM drafted a new RMP. The Court approved the SSA in October 2005, amending the August 2005 injunction to reflect the settlement terms. *See SSA (Dkt. 149).*

In July of 2006, the parties reached an agreement on attorney fees and costs, and the case was administratively terminated pending completion of the steps required by the SSA. *See Order (Dkt. 151).* In its present motion for attorney fees, WWP is not seeking any fees up to this point in the litigation, nor are they seeking fees past this point for monitoring the progress of the SSA.

The fees WWP seeks in this motion begin with fees incurred in investigating and challenging BLM decisions made after the massive Murphy Complex Fire in July of 2007. In 2008, WWP filed a motion to reopen the case to challenge these decisions, and also filed a motion to file a supplemental complaint and a motion for injunctive relief as to the allotments governed by the SSA. The Court denied the motions to the degree they sought to challenge decisions in the allotments governed by the SSA. *See Memorandum Decision (Dkt. 201).* With regard to the 36 allotments not governed by the SSA, the Court rejected the BLM's jurisdictional objections, and granted WWP's motions to reopen and to file a supplemental complaint. The Court denied WWP's motion for injunctive relief, holding that an evidentiary hearing would be necessary.

WWP filed a Revised Supplemental Complaint in 2008 challenging the BLM's decisions (1) to continue grazing at the same levels as before the fire despite the fire's

**Memorandum Decision & Order - 2**

destruction of habitat for sensitive species; (2) to enact criteria for reopening areas closed to grazing; and (3) to construct and repair fences without complying with NEPA, FLPMA, and the RMP. WWP also refiled its motion for injunctive relief.

The Court held a ten-day evidentiary hearing on WWP's motion for injunctive relief and issued an 81-page decision setting forth its Findings of Fact and Conclusions of Law. While the Court refused to enjoin grazing as requested by WWP, it did enjoin the BLM from "interpreting the 1987 RMP in any manner other than imposing requirements (1) to maintain or enhance existing and potential populations of the sensitive species within the planning area, and (2) to ensure that wildlife goals and watershed needs will be satisfied prior to allowing increases in livestock use." *See Findings & Conclusions (Dkt. 363)* at p. 78. The Court granted in part the BLM's motion for summary judgment to the extent that it sought summary judgment on WWP's request for a total ban on grazing.

WWP argues that it is the prevailing party and that it is entitled to fees under the Equal Access to Justice Act (EAJA).

## ANALYSIS

### Prevailing Party

Under the EAJA, a court "shall award to a prevailing party" fees and other expenses incurred "in any civil action . . . unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." *See* 28 U.S.C. § 2412(d)(1)(A). To be a prevailing party, a litigant must "achieve a material alteration of the legal relationship of the parties, and the alteration

**Memorandum Decision & Order - 3**

must be judicially sanctioned." *America Cargo Transport, Inc., v. U.S.*, 625 F.3d 1176, 1182 (9th Cir. 2010). Under this definition, WWP is a prevailing party. The Court's Findings of Fact and Conclusions of Law enjoined the BLM from interpreting the RMP in a certain manner, and this constituted a material alteration of the legal relationship between the parties.

**Substantial Justification**

As a prevailing party, WWP is entitled to fees and costs unless the BLM's position was "substantially justified." The fact that WWP prevailed raises no presumption that the BLM's position was not substantially justified. *Kali v. Bowen*, 854 F.2d 329, 334 (9th Cir.1988). The position of the BLM is substantially justified if it is "justified to a degree that satisfies a reasonable person." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988). That is, it must have a reasonable basis in both law and fact. *Id.* "Put another way, substantially justified means there is a dispute over which reasonable minds could differ." *Gonzales v Free Speech Coalition*, 408 F.3d 613 (9th Cir. 2005).

WWP argues that after the Murphy Complex Fire, the BLM misinterpreted the RMP and ignored the Court's earlier decision directing how it should be interpreted. In that earlier decision, issued in 2005, the Court held that certain provisions of the RMP were mandatory, not discretionary, in their direction to protect sensitive species. *Bennett,* 392 F.Supp. 2d at 1227. Three years later, after the Murphy Complex Fire, the Court found that the BLM was again misinterpreting the RMP and held that this "erroneous interpretation by the BLM led it to conclude that despite the massive loss of habitat in the

Memorandum Decision & Order - 4

[Murphy Complex Fire], they can maintain grazing at pre-MCF levels and seasons-of-use on the unburned allotments." *Id.* at ¶ 66, p. 67. The Court ordered the BLM to "apply a more rigorous standard to grazing authorizations" to enhance sensitive species and ensure that wildlife goals are met before allowing increases in grazing use. *Id.* at ¶¶ 75-76, p. 69. Importantly, the Court did not enjoin grazing: "The Court is confident that the BLM will comply with this new direction in its grazing authorizations so that the Court does not need to intervene at this time to issue the total ban on grazing requested by WWP." *Id.* at ¶ 77, p. 69.

According to WWP, the BLM cannot now claim substantial justification because it was told in 2005 how to interpret the RMP and then three years later rejected the Court's interpretation and reverted to its old discredited interpretation. The Court disagrees. In 2008, the BLM was in the middle of a crisis. The Murphy Complex Fire burned over 400,000 acres with catastrophic results. Its size was unprecedented, and the destruction raised immense challenges for the BLM managers. The evidence presented to the Court showed that the BLM was doing the best it could in this dire situation. While the BLM was committing the same error in interpretation after the fire as it did before, its post-fire error was the result of managers scrambling to salvage something from a disaster, and was not a blatant disregard of the Court's prior decision. The BLM had closed over 600,000 acres to grazing, and was struggling to determine how to manage the small parcels unaffected by the fire. The landscape had so changed that a reasonable argument could be made to support the BLM's management, even if that argument ultimately

**Memorandum Decision & Order - 5**

proved unsuccessful.  Indeed, the Court had enough confidence in the BLM to refuse to enjoin grazing, a confidence the Court would never have placed in a party that was willfully ignoring the Court's prior rulings.

For all of these reasons, the Court finds that the position of the BLM was substantially justified, and hence will deny the motion for fees and costs.

## ORDER

In accordance with the Memorandum Decision set forth above,

NOW THEREFORE IT IS HEREBY ORDERED that the motion for attorney fees and costs (docket no. 382) is DENIED.

DATED:  **March 30, 2011**

Honorable B. Lynn Winmill
Chief U. S. District Judge